IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **BRIAN ELWELL,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| v. | : | No. 18-cv-0489 |
| **SAP AMERICA, INC.,** | : | |
| *Defendant*. | : | |

**Goldberg, J.**                                                                                                               **March 8, 2019**

## Memorandum Opinion

Plaintiff, Brian Elwell, has sued Defendant, SAP America, Inc. ("SAP"), alleging that Defendant breached an employment contract and violated several sections of the California Labor Code by failing to pay him the correct amount of commissions. Defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b). For the reasons stated below, Defendant's motion will be granted in part and denied in part.

### I.   PROCEDURAL BACKGROUND

On September 8, 2017, Plaintiff filed a Complaint against Defendant in the Superior Court of Los Angeles County, alleging violations of several California state laws for failing to pay him commission wages. (Notice of Removal 11/14/18, ECF No. 1-1.) On November 14, 2017, Defendant removed the case to the United States District Court for the Central District of California. (Id.)

On January 11, 2018, Plaintiff filed his First Amended Complaint against Defendant and "Does 1 through 5" in the District Court for the Central District of California. (1st Am. Compl.,

ECF No. 1-14.) Defendant moved to transfer this matter to this Court, which was granted on February 2, 2018. (Or. 2/2/18, ECF No. 1-25.)

On May 2, 2018, Plaintiff filed his Second Amended Complaint against Defendant, raising the following claims (2d Am. Compl., ECF No. 17):

- Breach of contract and the violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL") (Count I);

- Promissory estoppel, pled in the alternative (Count II);

- Unjust enrichment, pled in the alternative (Count III);

- Withheld wages in violation of California Labor Code § 225.5 (Count IV);

- Failure to timely pay wages in violation of California Labor Code §§ 204, 210 (Count V);

- Failure to furnish accurate wage statements in violation of California Labor Code § 226 (Count VI);

- Failure to maintain required records in violation of California Labor Code §§ 1174, 1175 (Count VII);

- Failure to indemnify employees for necessary expenditures in violation of California Labor Code § 2802 (Count XI); and

- Violation of the Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200-17208 (Count XII).

Defendant moves to dismiss Plaintiff's Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. Dismiss, ECF No. 25.) Plaintiff has agreed to voluntarily withdraw Counts IV, V, and VII. (Pl.'s Resp. at 18, ECF No. 28.) For the reasons stated below I will grant Defendant's motion as to Counts I and II only.

## II. FACTUAL BACKGROUND

The Second Amended Complaint, viewed in the light most favorable to Plaintiff, alleges the following facts:

1. Defendant is a business software company that develops, markets, sells, distributes, and maintains business software. (2d Am. Compl. ¶¶ 5–6.) As part of its operation, Defendant has employed hundreds of salespeople. (Id. ¶ 7.)

2. Plaintiff has been employed by Defendant as a salesperson since 2011, and works on a commission basis. (Id. ¶ 7.) Plaintiff avers that Defendant "provides Plaintiff and other salespeople with a Commission Rate Calculator ('Commission Calculator') that describes the manner in which Plaintiff's and other salespeople's commissions will be determined." (Id. ¶¶ 11–12.) He further alleges that "[t]he Commission Calculator manifests the agreement between [Defendant] and its salespeople regarding the manner in which commissions are determined, earned, and paid. As [Defendant] explains to salespeople, the Commission Calculator 'will enable you to insert your annual Variable Pay, Annual Quota and will then calculate what your payout is per quarter. This [E]xcel tool can be used to determine monthly and/or quarterly payouts.'" (Id. ¶ 13, Ex. A.) According to Plaintiff, he has been paid "in the manner generally described by the Commission Calculator" since 2011. (Id. ¶ 14.)

3. Plaintiff alleges that he "accepted and performed the salesperson job based upon [Defendant's] representation that he would earn commissions based on the Commission Calculator, and then, after closing two major deals based upon such inducements, [Defendant] unilaterally failed to live up to its promise." (Id. ¶ 39.)

4. In July 2016, Plaintiff closed a $99.5 million deal with Defendant's client, Costco. Plaintiff alleges that Defendant owed him a commission of $953,897 for the deal under the Commission Calculator. (Id. ¶¶ 15–17.) However, Plaintiff learned in September 2016 that Defendant would not pay him that commission amount, and instead paid him a commission of $282,850. (Id.)

5. Sometime in October of 2016, Plaintiff complained to Defendant about the commission received for the Costco deal. Subsequently, one of Defendant's General Managers, Rick Imber, responded to Plaintiff via e-mail, informing him that, based on the "2016 Field Sales Quota Credit Rules," Defendant had decided to unilaterally reduce Plaintiff's commission. (Id. ¶¶ 18–19.) Plaintiff avers that he had never seen the 2016 Field Sales Quota Credit Rules, which were not released until after he closed the deal with Costco. (Id. ¶¶ 20-21.)

6. Plaintiff closed another large deal in December of 2016 in the amount of $2,496,890, which he has alleged entitled him to a commission of $135,888 under the Commission Calculator. However, Plaintiff avers that Defendant only paid him a commission of $108,711. (Id. ¶ 22.)

7. Plaintiff also pleads class allegations for the breach of contract and PWPCL claims (Count I), promissory estoppel claim (Count II), and California Labor Code claims (Counts IV, V, VI, VII, VIII). (Id. ¶¶ 26–33.)

3

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id.

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted). "In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).

## IV. DISCUSSION AND ANALYSIS

### A. Breach of Contract and the PWPCL (Count I)

#### 1) Express Contract

Plaintiff alleges that Defendant breached the contract and violated the PWPCL by failing to pay Plaintiff his entire commission, as determined by the Commission Calculator. (2d Am. Compl. ¶¶ 34–36.) Defendant moves to dismiss this claim, arguing that Plaintiff has failed to adequately plead the existence of an enforceable contract because the Second Amended Complaint

does not include facts to support the requisite elements of a contract: the intent to be bound, definite terms, and consideration. (Def.'s Mot. Dismiss at 6–12.) Plaintiff responds that the reference to the Commission Calculator efficiently pleads the existence of an express contract. Alternatively, Plaintiff responds that the Commission Calculator establishes a unilateral or implied contract. (Pl.'s Resp. at 5–14.)

"Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." Barton v. Hewlett-Packard Co., 635 F. App'x 46, 48 (3d Cir. 2015). These requirements apply to both written and oral contracts. Gnames Advantage, L.P. v. CPC Assocs., Inc., No. 00-CV-4032, 2002 WL 31750209, at *3 (E.D. Pa. Nov. 22, 2002) (applying Pennsylvania law).[1]

Here, Plaintiff relies heavily on the reference to the Commission Calculator, alleging that it describes the manner in which Plaintiff's commissions will be determined. (See supra ¶ 2.) Upon review of the Second Amended Complaint, I conclude that Plaintiff has not pled any facts suggesting terms sufficiently definite to be enforced. Rather, his pleading makes the conclusory argument that the Commission Calculator manifests an agreement. This is insufficient because the Commission Calculator is an Excel spreadsheet that functions as a projection tool to calculate a commission and contains no promise or terms sufficiently definite to be enforced.

I note that the actual documents that apparently govern Plaintiff's compensation are titled "The Global Incentive Sales Plan" and the "Field Sales Quota Credit Rules," neither of which are mentioned in the Second Amended Complaint. While these documents were pled in the First Amended Complaint, they appear to have been removed. This is probably because both documents

---

[1] While the parties do not directly address what law applies to this contract, it appears that both sides agree that Pennsylvania law is appropriate. Accordingly, I address the contract claim according to Pennsylvania law.

give Defendant the right to review, modify, or adjust commission payments. The Third Circuit has found that where a company includes this type of reservation of rights, it "clearly manifest[s] its intention <u>not</u> to be bound by the commission rates set forth," and "no contract is formed if an employer retains complete discretion to modify or cancel an employee's commission." <u>Barton v. Hewlett-Packard Co.</u>, 635 F. App'x 46, 48 (3d Cir. 2015).

**2) Unilateral Contract**

Alternatively, Plaintiff asserts that he has adequately pled that the Commission Calculator is a "unilateral contract" by averring that Defendant has paid Plaintiff using this Commission Calculator during his entire employment. (Pl.'s Resp. at 15.) Plaintiff further argues that the Commission Calculator is the unilateral contract that he accepted by selling the software for Defendant.

"A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance." <u>Abbott v. Schnader, Harrison, Segal & Lewis, LLP</u>, 805 A.2d 547, 554 (Pa. Super. Ct. 2002) (quoting <u>Martin v. Capital Cities Media, Inc.</u>, 511 A.2d 830, 836 (Pa. Super. Ct. 1986)). "In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required." <u>Bauer v. Pottsville Area Emergency Med. Servs., Inc.</u>, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000) (quoting <u>Darlington v. General Electric</u>, 504 A.2d 306, 320 (Pa. Super. Ct. 1986) (Beck, J., concurring)).

In furtherance of his argument that the Commission Calculator was a unilateral agreement, Plaintiff cites an unpublished district court case, wherein the employer provided a "retention

program," which permitted employees to earn bonuses for time worked at the firm. Pilkington v. CGU Ins. Co., No. CIV. A. 00-2495, 2000 WL 33159253, at *1 (E.D. Pa. Feb. 9, 2001). The retention program statement provided specific terms, including that employees that left "due to no fault of their own such as reduction in work force, relocation of work assignment, etc. will become immediately eligible for the payment of any credited moneys." Id. The retention program statement also contained a term that the employees who were "terminated for cause immediately cease participation in the program and lose any accredited money and accrued interest." Id.

The retention program in Pilkington contained definite terms, definite application periods, and promises of eligibility. In contrast, the Commission Calculator is merely an Excel spreadsheet that functions as a projection tool to calculate a commission, but contains no promise or terms sufficiently definite to be enforced. (See supra ¶ 2.) Moreover, the Commission Calculator contained a "disclaimer" that the final payout and commission would be "available to each individual via the ICM Tool." (Id.) Because nothing in the Commission Calculator constitutes a promise, but instead describes the method used to compute commissions without stating when commissions would be paid or how much any salesperson would receive, I find that Plaintiff has failed to plead the existence of a unilateral contract.

Plaintiff also cites several Pennsylvania cases, which hold that provisions in an employment handbook can constitute a "unilateral offer of employment which the employee accepts by continuing performance of his or her duties." Caucci v. Prison Health Servs., Inc., 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001) (citing Bauer v. Pottsville Area Emergency Med. Serv., 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000)); Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 945 (Pa. Super. Ct. 2011), aff'd, 106 A.3d 656 (Pa. 2014) ("The employee handbook contained Wal-Mart's policies regarding rest breaks, off-the-clock work and meal breaks, policies which were reinforced

by Wal–Mart's corporate-wide policies and orientation sessions in which the handbook was disseminated and signed for by the hourly associates, resulting in a unilateral contract between Wal–Mart and the [plaintiffs].").

Inexplicably, Plaintiff has argued that the 2016 Field Sales Quota Credit Rules cannot be a unilateral contract, despite that he has cited cases that found policies in handbooks to be a unilateral contract. See, e.g., Bauer v. Pottsville Area Emergency Med. Servs., Inc., 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000) ("A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook."). Given that the 2016 Handbook provided that Defendant reserved the right to review any deal and adjust/withhold commissions at its discretion, and Plaintiff alleged that Defendant did adjust his commissions in 2015 and 2016, Plaintiff's argument is without merit. (See supra ¶¶ 4, 6.) Given the distinctions, Plaintiff has failed to plead the existence of a unilateral contract.

**3) Implied Contract**

Plaintiff also argues that the reference to the Commissions Calculator sufficiently pleads the existence of an "implied contract" because Defendant promised to pay Plaintiff commissions based on the formula provided therein. As evidence of this implied contract, Plaintiff notes that Defendant actually paid commissions based on this Commissions Calculator since 2011. Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances. Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015). The employee must show that he and the employer "intended to form a contract." De Asencio v. Tyson Foods, Inc., 342 F.3d

301, 311 (3d Cir. 2003) (quoting DiBonaventura v. Consolidated Rail Corp., 539 A.2d 865, 868 (Pa. Super. Ct. 1988)).

Here, Plaintiff's assertions regarding the alleged five-year course of conduct merely reveals his expectation about being paid according to the Commission Calculator. And again, Plaintiff has not averred any facts regarding Defendant's intent to obligate itself to payments according to the Commission Calculator. Additionally, Plaintiff's pleading references a disclaimer that "[y]our final quota, Payout curves/Commission rates will be made available to each individual via the ICM Tool." (See supra ¶ 5.) Further, Plaintiff references the 2016 Field Sales Quota Credit Rules, which contain an express reservation of rights.[2] See Giuliani v. Polysciences, Inc., 275 F. Supp. 3d 564, 578–79 (E.D. Pa. 2017) ("Although plaintiff claims that he received a bonus every year of his employment irrespective of profitability, the complaint is devoid of facts suggesting that the payment of bonuses was anything other than discretionary or that defendant intended to obligate itself to pay bonuses each year."). Accordingly, I find that Plaintiff has failed to plead the existence of a unilateral contract.[3]

Accordingly, Plaintiff's breach of contract and PWPCL claims (Count I) will be dismissed. However, in light of the fact that a district court should allow the plaintiff to amend his complaint

---

[2] Plaintiff argues that Defendant cannot rely on the 2016 Field Sales Quota Credit Rules because it is not a legal contract, given that it permits the Defendant to amend or withhold the commissions. However, Defendant does not argue that the 2016 Field Sales Quota Credit Rules constitutes a contract, but instead uses it as "course of conduct" evidence to establish that Defendant did not intend to be bound by the Commission Calculator. Based on the law described herein, this evidence is properly considered to determine the existence of an implied contract in light of the surrounding circumstances.

[3] Because Plaintiff has failed to sufficiently plead a breach of contract claim, his PWPCL claim is also insufficient. Panetta v. SAP Am., Inc., No. 05-4511, 2007 WL 1001889, at *7 (E.D. Pa. Mar. 30, 2007) (citing Banks Engineering Co. v. Polons, 697 A.2d 1020, 1024 (Pa. Super. Ct. 1997)).

9

within a set period of time, unless an amendment would be inequitable or futile, I will grant Plaintiff leave to amend as to Count I to attempt to cure the deficiencies described herein. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**B. Promissory Estoppel (Count II)**

Plaintiff also brings a promissory estoppel claim (Count II), alleging that he relied on Defendant's representations that he would earn commissions based on the Commission Calculator. (2d Am. Compl. ¶¶ 37–40.) Defendant moves to dismiss this claim, arguing that Plaintiff has failed to adequately plead the existence of a promise where the Second Amended Complaint merely contains a broad and vague implied promise. (Def.'s Mot. Dismiss at 13–15.) Plaintiff responds that he has established the existence of a promise by Defendant by alleging that Defendant provided him with the Commission Calculator, which contained express language that it would be used to determine the amount of commission owed. (Pl.'s Resp. at 14–16.)

To maintain a promissory estoppel action a plaintiff must show the following elements: (1) the promisor made a promise that it should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." Waterford Mortg. Co. v. Integrated Alarm Servs. Grp., Inc., No. 06-3967, 2008 WL 4589630, at *4 (E.D. Pa. Oct. 14, 2008) (citing Shoemaker v. Commw. Bank, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997)). The Third Circuit has held that there can be no justifiable reliance without an "express promise." C & K Petroleum Prods. Inc. v. Equibank, 829 F.2d 188, 191-92 (3d. Cir. 1988). "The Third Circuit has reasoned that reliance on an implied promise is not reasonable, and, therefore, an implied promise is insufficient to assert a claim for promissory

estoppel under Pennsylvania law." KSM Assocs., Inc. v. ACS State Healthcare, LLC, No. 05-4118, 2006 WL 1308267, at *2 (E.D. Pa. May 10, 2006).

Here, Plaintiff has only alleged the vague promise that he "accepted and performed the salesperson job based upon Defendant's representation that he would earn commissions based on the Commission Calculator." (See supra ¶ 4.) However, as noted above, nothing in the Commission Calculator constituted a promise, but instead described the method used to compute commissions without stating when commissions would be paid or how much any salesperson would receive.

Accordingly, Plaintiff's promissory estoppel claim (Count II) will be dismissed.

## C. Unjust Enrichment (Count III)

Plaintiff also brings an unjust enrichment claim (Count III), alleging that Defendant was unjustly enriched because Plaintiff "accepted and performed the salesperson job based upon [Defendant's] representation that he would earn commissions based on the Commission Calculator, and then, after closing two major deals that resulted in over $100 million in sales revenues, [Defendant] both reaped the benefits of the sales revenues and retained the very commission payments that motivated Plaintiff to make the sales in the first place." (2d Am. Compl. ¶ 43.) Defendant moves to dismiss this claim, arguing that Plaintiff has failed to adequately plead that Defendant was unconscionably enriched by Plaintiff and/or his services. (Def.'s Mot. Dismiss at 15–17.) Plaintiff responds that he has established an unjust enrichment claim because Defendant did not pay him the full amount owed to him under the Commission Calculator. (Pl.'s Resp. at 16–18.)

"A claim of unjust enrichment requires the plaintiff to 'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be

unconscionable for the party to retain without compensating the provider.'" Martin v. Snap-Tite, Inc., 641 F. App'x 126, 130 (3d Cir. 2016) (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir.1987)). At the Motion to Dismiss stage, a plaintiff must allege the commissions he believes are owed to him and that these commissions were not paid. Deron v. SG Printing, Inc., No. 3:11CV1934, 2012 WL 3992960, at *10 (M.D. Pa. Sept. 4, 2012) ("Plaintiff sold $6,937,451 in services for SG Printing in 2010 and 2011 and earned $642,022 in commissions. Plaintiff further alleges that of his 2010–2011 commissions, he was only paid $247,774, leaving defendants with the benefit of not paying plaintiff approximately $394,248 in commissions defendant allegedly owed to plaintiff under the employment agreement. Thus, plaintiff alleged the commissions he believed to be earned and owed to him, precisely what defendants contend plaintiff must do to establish a benefit.")

Here, Plaintiff alleges that he was owed $953,897 for the deal with Costco, but was instead only paid $282,850. (See supra ¶ 4.) Plaintiff further alleges that he was owed $135,888 for the deal in December 2016, but was only paid $108,711. (See supra ¶ 6.) Based on these allegations, Plaintiff has pled that Defendant retained the benefit of the difference between what Plaintiff believed he was owed and what he was paid. While Defendant urges that Plaintiff's unjust enrichment claim should be dismissed, the cases cited in support of this argument are irrelevant because they involve motions for summary judgment, which is a much higher standard of proof. See, e.g., Kia v. Imaging Scis. Int'l, Inc., 735 F. Supp. 2d 256, 269 (E.D. Pa. 2010) (deciding a motion for summary judgment); Downey v. First Indem. Ins., 214 F. Supp. 3d 414, 432 (E.D. Pa. 2016) (same); Bair v. Purcell, 500 F. Supp. 2d 468, 495 (M.D. Pa. 2007) (same).

Accordingly, I will deny Defendant's Motion to Dismiss as to the unjust enrichment claim (Count III).

### D. Violation of Cal. Lab. Code § 226 (Count VI)

Plaintiff also alleges the violation of California Labor Code § 226(a) (Count VI) for Defendant's failure to provide him with accurate wage statements that included all required information, and the failure to maintain these records within the State of California. (2d Am. Compl. ¶¶ 57–58.) Defendant moves to dismiss this claim, arguing that Defendant did provide accurate wage statements to Plaintiff, and attached such wage statements. Further, Defendant argues that the wage statements were "readily accessible" as required under California state law. (Def.'s Mot. Dismiss at 22–24, Ex. B.) Plaintiff responds that Defendant violated § 226 by not providing him with "accurate" wage statements, and maintaining these wage statements in Pennsylvania, rather than in California. (Pl.'s Resp. at 19–21.)

California Labor Code § 226(a) states:

(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing
    (1) gross wages earned,
    (2) total hours worked by the employee, except as provided in subdivision (j),
    (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,
    (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,
    (5) net wages earned,
    (6) the inclusive dates of the period for which the employee is paid,
    (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number,
    (8) the name and address of the legal entity that is the employer . . . and
    (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

> The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

Whether or not Defendant has adhered to § 226(a) is a factual question that is not appropriately decided at the Motion to Dismiss stage. Accordingly, Defendant's Motion to Dismiss the California Labor Code § 226(a) claim (Count VI) will be denied.

### E. Violation of Cal. Lab. Code § 2802 (Count XI)

Plaintiff also alleges that he has "been required to conduct various sales activities and to communicate with SAP, other employees, customers, potential customers, vendors, and other third parties via their company laptop computers through the SAP network and support portal, email, videoconference, webinars, and search engines, which all require internet access and services," but was not reimbursed for these expenses in violation of California Labor Code § 2802(a). (2d Am. Compl. ¶¶ 68–72.) Defendant has moved to dismiss this claim, arguing that Plaintiff has failed to allege that he ever sought reimbursement from Defendant. (Def.'s Resp. at 25.) Plaintiff has responded that Defendant violated § 2802 because Defendant knew or had reason to know that he incurred these expenses, and did not reimburse him. (Pl.'s Resp. at 21–22.)

California Labor Code § 2802(a) provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Under California law, § 2802 "focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the

14

employee has incurred a reimbursable expense. If it does, it must exercise due diligence to ensure that each employee is reimbursed." Stuart v. Radioshack Corp., 259 F.R.D. 200, 203 (N.D. Cal. 2009).

Here, Plaintiff has pled that he incurred expenses during the course of his work for Defendant and was never reimbursed. (2d Am. Compl. ¶¶ 68–72.) Because it is a question of fact as to whether Defendant "knew or should have known" that Plaintiff incurred these expenses, I will deny Defendant's Motion to Dismiss the California Labor Code § 2802(a) claim (Count XI).

**F. Violation of the California Unfair Competition Law (Count XII)**

Plaintiff further alleges that Defendant violated the California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200-17208, by violating California Labor Code §§ 226 and 2802. (2d Am. Compl. ¶¶ 73–76.) Defendant has moved to dismiss this claim, arguing that Plaintiff has failed to allege any violation under California Labor Code §§ 200, 201, 202, 204, 210, 221, 223, 225.5, 1174, 1174.5, or 2751, and has failed to plead the availability of injunctive relief. (Def.'s Resp. at 26–29.) Plaintiff has responded that Defendant has violated California Labor Code §§ 226 and 2802. (Pl.'s Resp. at 22–24.)

A private plaintiff's remedies under the California Unfair Competition Law are "generally limited to injunctive relief and restitution." Kasky v. Nike, Inc., 45 P.3d 243, 303–04 (Cal. 2002). California courts have also held that "payment of wages unlawfully withheld from an employee [is] also a restitutionary remedy authorized by section 17203. The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200." Cortez v. Purolator Air Filtration Prod. Co., 999 P.2d 706 (Cal. 2000).

Here, Plaintiff has satisfactorily pled a claim under the California Competition Law by properly pleading violations of California Labor Code § 226 for failing to provide accurate wage

15

statements and California Labor Code § 2802 for failing to reimburse Plaintiff for expenses incurred. Moreover, Plaintiff does not need to plead the availability of injunctive relief, as Defendant urges, because restitution of unlawfully withheld wages is available per § 17203. Accordingly, I will deny Defendant's Motion to Dismiss the California Unfair Competition Law claim (Count XII).

## V. CONCLUSION

For the foregoing reasons, I will grant Defendant's Motion to Dismiss as to the breach of contract and PWCPL claim (Count I) and promissory estoppel claim (Count II). Plaintiff has agreed to voluntarily withdraw the violation of California Labor Code § 225.5 (Count IV), California Labor Code § 204, 210 (Count V), and California Labor Code § 1174 (Count VII). I will deny Defendant's Motion to Dismiss as to the unjust enrichment claim (Count III), California Labor Code § 226 claim (Count VI), California Labor Code § 2802 claim (Count XI), and California Unfair Competition Law claim (Count XII).

An appropriate Order follows.